IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

DEBORAH MOGENSEN
AND KARL MOGENSEN,
*Plaintiffs*,

v.

Michelle Welch , in her individual
capacity and in her official capacity
as the Senior Assistant Attorney
General of Virginia and
Director of the Animal Unit
*Defendant*.

_____

**Case No. 6:23-cv-00077-NKM**


**JURY TRIAL DEMANDED**

## PLAINTIFFS' MOTION FOR AN EMERGENCY PRELIMINARY INJUNCTION

Deborah and Karl Mogensen bring this Renewed Motion for an Emergency Preliminary Injunction pursuant to 42 U.S.C. § 1983 for the ongoing violation of their Constitutional rights under the Fourteenth Amendment of the U.S. Constitution to be provided adequate due process before being deprived of fundamental rights. Defendant Michelle Welch, in her individual and official capacities, has mischaracterized the facts in this case to try to escape liability and attempt to underplay the gravity of Plaintiffs' injuries at the hands of Defendant. As such Mr. and Ms. Mogensen seek an Emergency ruling on the following requests:

1. This Court declare the ten day notice period unconstitutional under the facts surrounding this statute such as the requirement—to an adequate defense—of having a scientific, species expert regarding taken animals, the necessity for a competent legal team in the area of civil forfeiture an constitutional rights, and the need for discovery such a documentary evidence and depositions, inter alia—all of which cannot be accomplished in ten business day from a taking of agricultural and farm animals;

2. Grant a temporary restraining order against the Defendant from pursuing a civil forfeiture hearing until this Court rules on the issues before it;

3. Declare unconstitutional the Defendant's attempts at exercising control over Plaintiffs' property through alleged animal action plan, which mandates that Defendant take certain action regarding Plaintiffs' animals which were not seized and are not subject to the requested forfeiture hearing; and

4. Grant a temporary restraining order against the Defendant from exercising control over said animals through these action plans—regarding animals who were admittedly not seized and are not subject to the requested forfeiture hearing

In support of their Motion, Plaintiffs present the following:

## **<u>INTRODUCTION</u>**

The process that Mr. and Ms. Mogensen are due under the law is the right to be present an adequate defense to a situation that including the taking of 95 animals, multiple experts, approximately 7 banker boxes of discovery and much more. Having a legal battle over whether particular animals have been abused is not problem; the problem is that the Defendant is using an unconstitutional law to

practically ensure Plaintiffs' inadequate defense to its attempt at taking alleged paid for property, agricultural and zoo animals, *inter alia*. We are talking about the government taking of property, government takings that come with correlated constitutional protections from abuse.

## PROCEDURAL POSTURE AND RELEVANT FACTS

1.

On or about December 6-7, 2023, Defendant supervised a search of Plaintiffs' Natural Bridge Zoo, and during that period, Defendant ordered and condoned the taking of approximately 95 animals from the zoo. (See Ex. 1.)

2.

During the search and seizure, Defendant had approximately seven alleged "veterinarian experts" present assessing the zoo animals; all seven of these veterinarians may testify at said requested civil forfeiture hearing. Each of these alleged veterinarian "experts" presumable have notes and possibly reports related to the approximately 95 taken animals.

3.

The approximately 95 taken animals were separated after being taken and thus are currently being held at different locations based on information and belief.

4.

During the seizure, a white tiger, owned by Plaintiffs, was killed, with the Defendant's so called expert veterinarians claiming that Plaintiffs treatment of the animal warranted said killing; but according to Plaintiffs, Defendant's ineptness led to the torture and killing of said white tiger. (See Ex. 2, https://m.youtube.com/watch?si=1Mm2vAadNeGcYHkb&fbclid=IwAR2j9WnYiiVQVZM-ZU_8jJ8d44zpCHwb908tFIgp_0ROXLO4FuH-WywnUvw&v=PY_RCE26LaQ&feature=youtu.be "Raw Interview: Natural Bridge Zoo owner's daughter, Gretchen Mogensen, talk with WSLS." )

5.

On or about December 8, 2023, Defendant served notice of its request to hold a civil forfeiture hearing on December 20, 2023 pursuant to Va. Code Ann. § 3.2-6569 ( See Ex. 2.)

6.

The hearing only provides 10 business days to prepare do the following:

1.  Request and acquire relevant discovery;

2.  Defendant Welch has represented that there are about 7 banker boxes of evidence and Plaintiff has received approximately 1,500 pages of discovery to this date;

3.  Acquire experts for the various animals at issue because different

species require different experts, and Defendant took more than
15 species of animals;

4. Provide each expert sufficient time to examine the evidence, including
   on-site visits to the animals for independent examination;

5. Provide each expert with sufficient time to actually write a report;

6. Permit Plaintiffs sufficn3int time to acquire a legal team;

7. Sufficient time for the legal team to talk to experts, gather
   witnesses, and prep witnesses; and

8. Sufficient time to depose witnesses, so the civil forfeiture hearing
   is not trial by ambush

That is just some of the time-consuming issues that Defendant wants addressed
in only ten days. Civil Plaintiffs' attorneys are given months to find experts and
generate reports, in cases that do not involve multiple experts for multiple
species, and in cases in which the outcome can have **severe criminal implications**.

## 7.

Moreover, owners who have nothing to do with the alleged abuse of their
animals, are only required to have five days' notice of the civil forfeiture to mount
their defense, a defense that again will require multiple experts and scientific
evidence, along with finding experienced representative counsel—all of which
carries with it significant time to assess evidence, coordinate schedules, and

mount a legitimate defense.

8.

In this case, a taken lemur and one of the four giraffes are not owned by the Plaintiffs at the time they were seized; the actual owners have been notified by counsel and intend on making a claim against the seizure, pursuant to relevant statutes, to regain possession of their seized animals.

9.

Defendant gave the Plaintiffs "Action Plans," attempting to mandate particular steps toward the care of approximately 15 different type of animals; the actions state the following, *inter alia*:

> "This action plan has been provided to the primary custodian for these animals. Failure to follow this plan or any written plan provided by a veterinarian utilized by the custodian should be viewed as a willful act. Animal Control Officers should closely monitor Natural Bridge Zoo to ensure compliance with these requirements and the custodian is hereby notified that further action may be taken against him if these improvements are not made promptly."

(See Ex. 3.) These Actions Plans, mandating certain steps towards the care of certain property (animals) relate to property (animals) that Defendant did not seize and are not subject to the forfeiture hearing that Defendant is pursuing.

## GENERAL STANDARD OF REVIEW FOR INJUNCTIVE RELIEF

Federal Rule of Civil Procedure 65 establishes the procedure for federal courts to grant preliminary injunctions. Fed. R. Civ. P. 65. The purpose of a preliminary injunction is "to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits." Pashby v. Delia, 709 F.3d 307, 319 (4th Cir. 2013) (citation omitted). Because of the extraordinary nature of injunctive relief, the Supreme Court has admonished that preliminary injunctions "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. National Resources Defense Council, 555 U.S. 7, 22 (2008).

A plaintiff seeking a preliminary injunction must satisfy each of the following four factors: (1) that the plaintiff is likely to succeed on the merits; (2) that the plaintiff is likely to suffer irreparable harm in the absence of preliminary injunctive relief; (3) that the balance of equities tips in the plaintiff's favor; and, (4) that the injunction is in the public interest. League of Women Voters of N. Carolina v. N. Carolina, 769 F.3d 224, 236 (4th Cir. 2014) (citing Winter, 555 U.S. at 20).

First, a plaintiff must make a *clear* showing that he is likely to succeed on the merits of his claim. Winter, 555 U.S. at 20-22. The plaintiff "need not establish a certainty of success, but must make a clear showing that he is likely to succeed at

trial." Id. Here, the Mogensens can show a likelihood of success on the merits. because they have not been given adequate due process by Defendant.

Likewise, a plaintiff must make a *clear* showing that it is likely to be irreparably harmed absent injunctive relief. Id. A clear showing requires that "a plaintiff must demonstrate more than just a 'possibility' of irreparable harm." Di Biase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017) (quoting Winter, 555 U.S. at 22)). A plaintiff's injury must be substantial to warrant injunctive relief and the remedy of money damages must be insufficient. Di Biase, 872 F.3d at 230 (quoting Hughes Network Sys. v. Interdigital Communications Corp., 17 F.3d 691, 693 (4th Cir. 1991)). Only then may the court consider whether the balance of equities tips in the plaintiff's favor. Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346-47 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010), reissued in part, 607 F.3d 355 (4th Cir. 2010), overruling Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir. 1977). In this case, the Mogensens will suffer an immediate irreparable harm because, without a stay of the 10-day hearing they will likely lose their (animals) property to the government's taking for good.

Third, to determine whether the defendant will suffer from an injunction in favor of the plaintiff, "courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the

requested relief.'" <u>Winter v. National Resources Defense Council,</u> 555 U.S. 7, 24 (2008) (quoting <u>Amoco Production Co. v. Village of Gambell, Alaska</u>, 480 U.S. 531, 542 (1987)). The court "balances the conveniences of the parties and possible injuries to them according as they may be affected by the granting or withholding of the injunction." <u>Yakus v. U.S.</u>, 321 U.S. 414, 441 (1941). The Mogensens will certainly suffer an irreparable harm in the absence of an injunction from this Court, and Defendant will suffer no injury;

Lastly, the public interest is an important concern when balancing the effects of a preliminary injunction. "[W]here an injunction is asked which will adversely affect a public interest for whose impairment, even temporarily, an injunction bond cannot compensate, the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff." <u>Id.</u> The court must pay particular regard to the public consequences of employing the extraordinary relief of injunction. <u>Real Truth About Obama</u>, 575 F.3d at 347.

## A. Evidentiary Standard for Preliminary Injunction

Preliminary injunctions are governed by less strict rules of evidence than summary judgment or trial and are "customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." <u>Univ. of Tex. v. Camenisch</u>, 451 U.S. 390, 395 (1981).

In G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd., the Fourth Circuit reversed a district court order and found that although admissible evidence may be more *persuasive* than inadmissible evidence in the preliminary injunction context, it was in error for the district court to summarily reject the movant's proffered evidence because it may have been inadmissible at a subsequent trial. 822 F.3d 709, 725 (4th Cir. 2016). The Fourth Circuit found that district courts may look to and rely on hearsay or other inadmissible evidence when deciding whether a preliminary injunction is warranted. 822 F.3d 709, 725–26 (reasoning that "[b]ecause preliminary injunction proceedings are informal ones designed to prevent irreparable harm before a later trial governed by the full rigor of usual evidentiary standards"). There the court joined the seven sister circuits who had considered the issue and found the same. Id. The court found that in preliminary injunction proceedings the nature of evidence as hearsay goes to "weight, not preclusion" and sister circuits have permitted district courts to "rely on hearsay evidence for the limited purpose of determining whether to award a preliminary injunction." Id. (citations omitted).

### B.   Fundamental rights and immunities

Matters involving fundamental rights are reviewed with strict scrutiny and the state bears the burden to prove that the conduct is (1) necessary to achieve a compelling governmental purpose; (2) which is the least restrictive means to

achieve the purpose; (3) that no less burdensome means exist to accomplish the purpose; and (4), is narrowly tailored to achieve the purpose. <u>Meyer v. Nebraska,</u> 262 U.S. 390 (1923); <u>Pierce v. Society of Sisters,</u> 268 U.S. 510 (1925); <u>Palko v. Connecticut,</u> 302 U.S. 319 (1937); <u>Griswold v. Connecticut,</u> 381 U.S. 479 (1965). The Plaintiffs have a vested property interest in their animals. <u>Doe v. Alger,</u> 228 F. Supp. 3d 713, 728 (W.D.V.A. 2016).

### C. Sovereign and Qualified Immunity

Actions against state officials in their official capacity are not against the official, but against the state. <u>Will v. Mich. Dep't of State Police,</u> 491 U.S. 58, 71 (1989). Defendant Welch, in her official capacity, is therefore entitled to the same grant of sovereign immunity that would be granted to the state. <u>Kentucky v. Graham,</u> 473 U.S. 159, 166 (1985). To defeat sovereign immunity, Plaintiff must show that the state "entity itself is a 'moving force' behind the deprivation" of his federal right. <u>Id.</u> Therefore, the state entity's "'policy or custom' must have played a part in the violation of federal law." <u>Id.</u> (internal citations omitted).

That said, when a party is requesting prospective relief for an ongoing violation of federal law, the sovereign immunity granted by the Eleventh Amendment does not apply. <u>Ex Parte Young,</u> 209 U.S. 123 (1908). The moving party need only show that the violation of a federal law is continuous and that the

relief being sought is prospective in nature. <u>Verizon Md., Inc. v. Public Service Comm'n of Md.</u>, 535 U.S. 635, 645 (2002).

In contrast to actions against state officials in their official capacity, actions in their personal capacity trigger an analysis of qualified immunity. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982). But when Plaintiffs seek injunctive relief against public officials in their official capacity, qualified immunity does not apply. <u>Id.</u> at 819 n. 34. <u>See</u> <u>Raub v. Campbell</u>, 785 F.3d 876, 885 (4th Cir. 2015).

In this case, Plaintiffs defeat sovereign immunity and qualified immunity because they can show that their fundamental rights adequate due process are being violated and seeks prospective relief.

## <u>ARGUMENT AND CITATION OF AUTHORITY</u>

### I.  **Plaintiff can show a likelihood of success on the merits.**

#### a.  **The Mogensens have vested property interests in their animals at their zoo warranting an adequate opportunity to defend against their property being taken**

The Fourteenth Amendment of the Constitution protects the right to property and requires that due process be given before deprivation of that property. U.S. CONST. AMEND XIV. The basic principles of due process are notice and a meaningful opportunity to be heard. <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976). Though the Fourteenth Amendment protects the right to property, it does

not create an interest in property. <u>Goss v. Lopez</u>, 419 U.S. 565, 572 (1975). The property interest must be created by another source, such as state law. <u>Id.</u>

Further, the Supreme Court in <u>Goldberg v. Kelly</u> held that, prior to the termination of a vested property interest, an individual must be given an opportunity to address the evidence presented against him and confront adverse witnesses to satisfy due process. 397 U.S. 254, 269–70 (1970). <u>Goldberg</u> relied on the assertion that the opportunity to be heard is a pillar of due process and that the hearing **must be meaningful to fulfill the process guaranteed by the Fourteenth Amendment**. <u>Id.</u> at 267–68 (quoting <u>Armstrong v. Manzo</u>, 380 U.S. 385, 394 (1965)). The <u>Goldberg</u> Court explains:

> In the present context these principles require that a recipient have **timely and adequate notice** detailing the reasons for a proposed termination, and **an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally.** These rights are important in cases such as those before us, *where recipients have challenged proposed terminations as resting on incorrect or misleading factual premises or on misapplication of rules or policies to the facts of particular cases.* <u>Id.</u> (Emphasis added).

Here, the facts demonstrate an utter impossibility to have an effective opportunity to defend against the allegation and taking of 95 animals, due to the facts outlined in this case.

**II. The balance of the equities tips in Plaintiffs' favor and Defendant will suffer no harm because Mr. and Ms. Mogensen's have an opportunity to present a defense and have due process.**

The injury to Plaintiffs far outweighs any harm to Defendant. <u>Winter</u>, 555 U.S. at 24; <u>Yakus v. U.S.</u>, 321 U.S. 414, 441 (1941). The injury in this case is just not the taking of animals, the Plaintiffs' reputations are at stake, their business has closed, and the civil forfeiture hearing carries with it, criminal implications. The balance of equities clearly favors Plaintiffs.

### III. Ruling on the constitutionality of the 10-day civil-forfeiture hearing in favor of Mr. and Ms. Mogensen's serves the public interest by remedying a denial of due process.

Fundamentally, "it is always in the public interest to prevent the violation of a party's constitutional rights." <u>G & V Lounge, Inc. v. Michigan Liquor Control Comm'n</u>, 23 F.3d 1071, 1079 (6th Cir. 1994) (citing <u>Gannett Co., Inc. v. DePasquale</u>, 443 U.S. 368, 383 (1979)). Here, issuance of a preliminary injunction will serve the public interest because Plaintiffs' constitutional right to receive adequate due process has been violated. <u>Yakus v. U.S.</u>, 321 U.S. 414, 441 (1941). The public benefits from state entities honoring fundamental constitutional rights and honoring binding contracts, because numerous owners of agricultural and zoo animals have been subject to this hasty 10 day forfeiture hearing and were forced to show up with inadequate prepared representation.

## <u>CONCLUSION</u>

Defendant's conduct has caused irreparable harm to Debbie and Karl Mogensen, especially concerning the taking of their animals, and potential criminal charges and also irreparable harm has been caused by the Action Plans which place Mr. and Mrs. Mogensen under a permanent spotlight related to animals the government admits were not seized and not subject to their upcoming civil forfeiture hearing. For the reasons stated herein, Plaintiffs pray this Honorable Court GRANT Mr. and Ms. Mogensen's Motion in its entirety.

Respectfully submitted this 14th day of December 2023,

<u>/s/ MARIO B.WILLIAMS</u>
Mario B. Williams
Va. Bar No. 91955

**HUMANITY DIGNITY AND RIGHTS LLC**
5600 Roswell Road
Building C,  Suite 103
Sandy Springs, Georgia 30342
(404) 341-4434
mwilliams@hdrattorneys.com
admin@hdrattorneys.com
***Counsel for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing PLAINTIFF'S MOTION FOR PLAINTIFFS' MOTION FOR AN EMERGENCY PRELIMINARY INJUNCTION has been served upon the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record.

Respectfully submitted this 14th day of December 2023,

/s/ MARIO B.WILLIAMS
Mario B. Williams
Va. Bar No. 91955

**HUMANITY DIGNITY AND RIGHTS LLC**
5600 Roswell Road
Building C,  Suite 103
Sandy Springs, Georgia 30342
(404) 341-4434
mwilliams@hdrattorneys.com
admin@hdrattorneys.com
***Counsel for Plaintiffs***