UNITED STATES DISTRICT COURT
In the Western District of Virginia
Lynchburg Division

| | |
|---|---|
| DEBORAH MOGENSEN, et al., | ) |
| *Plaintiffs,* | ) |
| v. | ) Civil Action No. 6:23-cv-00077 |
| MICHELLE WELCH, | ) |
| *Defendant.* | ) |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR AN EMERGENCY PRELIMINARY INJUNCTION**

**INTRODUCTION**

On December 6, 2023, the Commonwealth of Virginia seized ninety-five animals from Plaintiffs' zoo because the animals were "in such a condition as to constitute a direct and immediate threat to [their] life, safety or health." ECF No. 3-2, 5; Va. Code § 3.2-9569. In addition, Plaintiff-zoo owners were provided "action plans" regarding numerous animals that were not seized but found in inhumane conditions. Plaintiffs now seek to delay the inevitable hearing in which they must publicly confront the evidence of their abuse and neglect of the animals. But the timing of that hearing is crucial because a resolution in the Commonwealth's favor would permit the animals' placement in facilities that can permanently meet their needs without further disruption to their health and welfare. Defendant, Assistant Attorney General Michelle Welch, in charge of prosecuting the seizure and ensuring the welfare of the affected animals, thus opposes delaying the state court hearing required by Virginia statute.

Plaintiffs' Complaint alleges that holding a civil forfeiture hearing within ten [business] days of taking said animals violate[s] the due process rights of Plaintiffs and requests a

1

temporary restraining order. ECF No. 1, ¶ 20. At the outset, the *Younger* abstention doctrine precludes this Court's intervention here; moreover, even absent that doctrine, the Commonwealth provides Plaintiffs with more than adequate due process under the circumstances as a matter of law. Plaintiffs' also seek to enjoin the Defendant from "exercising control over" their animals through "action plans." *Id*. This claim misunderstands the legal import of those plans. The action plans consist of observations by veterinarians that animals were receiving inadequate care, along with instructions on how to provide adequate care. But the legal obligation to provide adequate care is imposed by state law, not by the action plans. The action plans thus do not "excercis[e] control over" over Plaintiffs' animals and cannot be enjoined. Plaintiffs' Motion for a Preliminary Injunction should therefore be denied under the four (4) factor test provided in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).

## BACKGROUND

Virginia law prohibits the mistreatment of animals, with violations generally punishable as misdemeanor criminal offenses. Va. Code §§ 3.2-6503, 3.2-6503.1, 3.2-6570. Where such violations constitute a "direct and immediate threat" to the animal's "life, safety or health," officials may seize the animal. Va. Code § 3.2-6569(A). The officials must then petition a general district court for a hearing, which must be set within ten business days of the seizure, to determine whether the animal was mistreated. Va. Code § 3.2-6569(C). Although it is a civil hearing, the government must prove its case beyond a reasonable doubt. Va. Code § 3.2-6569(E). If the government prevails at this hearing, the matter is not over—the animal's owner has an appeal by right to the circuit court. Va. Code §§ 3.2-6569(E), 16.1-132. There, the owner is entitled to a trial *de novo* by jury. Va. Code §§ 3.2-6569(E), 16.1-136. While this trial is

generally to be held within thirty days of the appeal, it may be delayed where there is good cause to do so. Va. Code §§ 3.2-6569(E).

Here, the Office of the Attorney General (the "OAG") obtained a search warrant that permitted the seizure of ninety-five animals from the Plaintiffs' zoo after months of documented animal welfare problems. *See* Application for Search Warrant, attached as Exhibit 1. The warrant was based on months of personal observations presented in a sworn affidavit by Sargeant Boczar, a Certified Animal Cruelty Investigator and a sworn law enforcement officer with sixteen years of experience. *Id.* at 1. Boczar relied on the personal observations of OAG investigator Amy Taylor as well as information received by a former employee of the zoo, acting as a confidential informant and a second confidential informant who is an Animal Control Officer and elephant keeper at a zoo. *Id.*

On the day the search warrant was executed, December 6, 2023, law enforcement officers accompanied by seven veterinarians examined the zoo's animals and found the months of documented problems persisted. ECF No. 3-2, 1; ECF No. 3-4. As required by statute, a hearing was set for December 20, 2023, in state court. ECF No. 1, ¶ 14. Plaintiff asks this Court to enjoin this state hearing from proceeding, and a declaration that the ten-day notice period is unconstitutional as applied to them. ECF No. 2, 2.

Plaintiffs further allege that they received "action plans" indicating steps that should be taken to care for animals that were not seized. ECF No. 1, ¶ 18. The "action plans" provided to Plaintiffs detailed itemizations of the deficits in animal care found by the veterinarians at the zoo. *See* ECF No. 3-4. Those animals were found to have suspected parasites or lacked food or water, but the problems observed had not yet reached a point where the veterinarians found that the animals met the statutory requirement for seizure. These plans, signed by a "Recommending

3

Expert/Veterinarian," noted numerous observations regarding inadequate care being provided to remaining animals, with instructions on how to provide adequate care. ECF No. 3-4. The provision of adequate care is required by Va. Code §§ 3.2-6503 and 3.2-6503.1. The action plans noted that "further action may be taken" if the action plans were not followed. ECF No. 3-4. Plaintiffs ask for a declaratory judgment that the action plans themselves are unconstitutional, and that this Court enjoin Defendant "from exercising control over [the] animals through these action plans." ECF No. 3, 2.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy" subject to a four-part test. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). Plaintiffs must show (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Id.* Plaintiffs must make a "clear showing" they are "entitled to such relief," which is a higher burden than merely a preponderance of the evidence. *Id.* at 22.

## ARGUMENT

I. **Plaintiffs' request is barred by the *Younger* abstention doctrine**

Enjoining the pending forfeiture hearing from proceeding would violate the principle set out in *Younger v. Harris*, 401 U.S. 37 (1971). The Supreme Court in held *Younger* that "a federal court should not enjoin a pending state criminal proceeding except in the very unusual situation that an injunction is necessary to prevent great and immediate irreparable injury." *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 626 (1986). The *Younger* doctrine applies not just to criminal proceedings but to "civil proceedings in which important state interests are involved." *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. at

627. The Commonwealth of Virginia has demonstrated the importance of animal welfare through the enactment of extensive criminal and civil regulation regarding the proper care of animals. *See* Va. Code Title 3.2 Chapter 65, "Comprehensive Animal Care."[1] And an injunction is not necessary to prevent great and immediate irreparable injury to Plaintiffs—they have the ability to appeal the general district courts' judgment at the pending hearing for a trial *de novo*, including the ability to request a continuance of that subsequent hearing for as long as "good cause" requires. Va. Code §§ 3.2-6569(E), 16.1-136.

Plaintiffs' request for a declaratory judgment that the proceeding violates due process is simply another request for this court to stay the hearing. The Supreme Court has noted that "ordinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the long-standing policy limiting injunctions was designed to avoid." *Samuels v. Mackell*, 401 U.S. 66, 72 (1971). Thus, where "an injunction would be impermissible under these principles, declaratory relief should ordinarily be denied as well." *Id.* at 73.

## II. Plaintiff is not entitled to a preliminary injunction under *Winter*

In order to obtain an injunction, Plaintiffs must meet the four prong *Winter* test. Under the four *Winter* factors, Plaintiffs must show (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20. "The failure to show any one of the relevant factors mandates denial of the preliminary injunction." *Parson v. Alcorn*, 157 F. Supp. 3d 479, 491 (E.D. Va. 2016). Moreover, even if the

---

[1] *See also Brandy Found. Animal Sanctuary v. San Bernardino Cty*, No. CV 08-02292 DDP (PLAx), 2009 U.S. Dist. LEXIS 140834, at *13 (C.D. Cal. Jan. 26, 2009) (finding state had an important interest under *Younger* in preventing animal abuse).

moving party satisfies all the elements, preliminary injunctions "are not to be granted automatically." *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980). The Court retains discretion whether to issue a preliminary injunction, which discretion should be "sparingly exercised." *Id.*

### A. Plaintiffs cannot show they are likely to succeed on the merits.

Plaintiffs cannot meet the first *Winter* prong and, therefore, their motion for an emergency injunction is properly dismissed. The first prong of the *Winter* analysis is whether the Plaintiffs are likely to succeed on the underlying merits of their claim. *Winter*, 555 U.S. at 20.

First, the request for a permanent injunction staying the state court proceedings is barred by the *Younger* abstention doctrine, *see supra.* Second, Plaintiffs' premise is also fundamentally flawed because the state court proceedings do not violate Plaintiffs' right to due process. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424, U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). To determine if due process was afforded, courts apply the balancing test laid out in *Mathews* and consider: 1) "the private interest that will be affected by the official action," 2) "the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards," and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 335.

There is no question that Plaintiffs have a private property interest in the animals that were impounded that will be affected by the official action scheduled for December 20, 2023. Plaintiffs cannot, however, prevail on the other two *Mathews* prongs.

>i. <u>It is unlikely that the risk of an erroneous deprivation would be avoided with additional procedural safeguards</u>

There is a low risk of an erroneous deprivation in the case at bar because seven veterinarians oversaw the seizure and assisted the State in determining if there was an imminent threat to animals' lives, health, or welfare. Other federal circuits have found that there is a low risk of an erroneous deprivation when the animals are examined by a veterinarian before they were are seized. *See United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464, 486-87 (6th Cir. 2014) (holding that the risk of an erroneous deprivation was low where animals were examined pre-seizure by professional animal welfare officers"); *see also Reams v. Irvin*, 561 F.3d 1258, 1264 (11th Cir. 2009) (holding that "a post-deprivation . . . hearing was unlikely to spawn significant factual errors" because the animals were examined pre-seizure by a veterinarian) (internal quotation marks and citation omitted); *Westmore v. Hyde*, 732 Fed. App'x. 477, 479 (7th Cir. 2018) (same). Because there is a low risk of any error, it is axiomatic that additional delays in the hearing date would not lead to a more accurate outcome.

Plaintiffs argue that with more time to prepare they could better counter the evidence against them. ECF No. 3, 2. But if the Plaintiffs are unable to present a fulsome defense in ten business days, they are entitled by statute to appeal the general district courts' judgment and receive a trial *de novo*, including the ability to request a continuance of that subsequent hearing for as long as "good cause" requires. Va. Code §§ 3.2-6569(E), 16.1-136. Thus, the statutory scheme already includes procedural safeguards for animal owners like the Plaintiffs, who believe they will be unable to mount an adequate defense in ten business days.

Because there was a pre-seizure inspection of the animals by veterinarians and there is a right to a *de novo* appeal of the outcome of the initial hearing (Va. Code § 3.2-6569(C), (E)),

there is a very low risk that the hearing in ten days would result in an erroneous conclusion that would be cured by delaying the initial hearing.

      ii.    <u>There is a significant fiscal and administrative burden in delaying the hearing.</u>

The second *Mathews* factor also weighs in favor of timely hearing ten days after seizure as required by statute, rather than granting Plaintiffs the requested indefinite delay. Section 6569(F) requires the law enforcement officer who seized the animals at issue to provide for their care until the hearing. The locality may require the owner of the seized animals to post a surety bond for the care of the animals, but the bond is only forfeited to the locality for the cost of the animals' care if the owner is found guilty of the violation of Virginia's animal welfare laws. *Id.* Thus, the money the animals' owners must post as bond rises the longer the animals are held and the locality risks incurring the costs of the animals' care if a lengthy delay results in a successful defense resulting in a not guilty verdict. Both the owners and the State benefit from a prompt hearing to evaluate the evidence justifying the seizure of the animals at issue.

In the case at bar, there is the additional challenge that the ninety-five animals seized are zoo animals, including a number of primates, exotic birds, an exotic cat, and large farm animals such as donkeys, sheep, and llamas. ECF No. 2, 4. These animals have specific care needs, as detailed in the Application for Search Warrant, attached as Exhibit 1, 5-6 (detailing the specific needs of various animals observed by Office of the Attorney General investigator Amy Taylor that were not met at the zoo) and in the action plans, which involve many of the same species as the seized animals (ECF No. 3-4). Some of the animals seized require immediate veterinary care to address disease or injuries, such as problems with hooves or hair loss. *Id.* They have specific needs for enrichment, as noted in the action plans. ECF No. 3-4. In short, caring for the seized animals is a significant specialized undertaking that poses special challenges beyond even the

burden of caring for a domestic animal, such as a dog. Those challenges are magnified the longer the animals are impounded without being placed in a permanent home.

      iii.    <u>Plaintiffs are unlikely to succeed on the merits of their challenge to the "action plans."</u>

Plaintiffs are also unlikely to succeed on the merits of their due process challenge to the "action plans" that were given to them following the seizure of their animals. The action plans are simply recommendations from a veterinarian on how to comply with state law and do not have any inherent legal effect that can be enjoined. Instead, the plans are tantamount to a written warning advising Plaintiffs of the possibility of future action if the identified problems were not promptly corrected and maintained.

There is nothing inherently unconstitutional about the animal welfare action plans. Although issued under federal rather than state law, this Court issued similar action plans in its restraining order in the Envigo beagle case. *U.S. v. Envigo RMS, LLC*, 2022 U.S. Dist. LEXIS 91545, *32-*35, 2022 WL 1607840 (W.D. Va., May 21, 2022). In *Envigo*, federal law enforcement officials sought an *ex parte* restraining order to prevent a company that bred and sold beagles for use in scientific research from continuing its operations because of serious and pervasive violations of the federal Animal Welfare Act. *Id.* at *2. Pursuant to a search warrant, 145 dogs were seized on May 18, 2022. *Id.* On May 21, 2022, this Court issued a restraining order governing continuing operations at the target facility because of the serious, chronic, pervasive violations of the Animal Welfare Act at the facility. *Id.* at *2-*3.

The federal government then sought a restraining order demanding certain actions to ensure the care of the beagles remaining at Envigo. *Id.* The action items on the restraining order function similarly as the "action plans" complained of by the Plaintiffs in the case at bar except that Virginia's action plans for the Natural Bridge Zoo animals were not issued with the force of

9

a court order. Instead, the action plans function to identify additional failures of the Plaintiffs to comply with Virginia's animal welfare laws, but the identified failures did not yet rise to an immediate threat of harm to the animals identified in the action plans that were not seized.

Action plans provide animal owners an opportunity to correct deficits in their animals' care that do not yet rise to an immediate threat to the animals' life, health, or welfare. At best, the action plans can prevent additional suffering of animals who were not seized. Failing that, the action plans provide owners with notice that they are at risk of additional seizures and forfeitures of their animals if corrective action is not taken. This sort of written warning is in no way unconstitutional. It is not unconstitutional when given the force of court order in the form of a restraining order issued pursuant to federal law and it is not unconstitutional when given as a written warning by a veterinarian following state animal welfare laws.

Accordingly, Plaintiffs cannot meet even the first prong of the *Winter* factors and they are not entitled to an emergency injunction.

### B. Plaintiffs cannot show they are likely to suffer irreparable harm.

Plaintiffs' motion fails on the second *Winter* factor as well, because Plaintiffs cannot show they are likely to suffer irreparable harm unless they receive injunctive relief. Plaintiffs "must show that "[i]rreparable harm [is] neither remote nor speculative, but actual and imminent." *Update, Inc. v. Samilow*, 311 F. Supp. 3d 784, 795-96 (E.D. Va. 2018). Plaintiffs are challenging the timeline of the hearing on the basis of due process. Thus, they must show that there is an actual and imminent likelihood their procedural due process rights will be violated if the hearing is held in ten days rather than some indefinite future date.

As discussed above, there is a very low risk that the seizure of Plaintiffs animals was in error. The search warrant was supported by an affidavit that included months of investigation

10

and an anonymous former employee witness. *See* Application for Search Warrant, attached as Exhibit 1. During the search, the animals and their enclosures were inspected by expert veterinarians before the animals were seized. ECF No. 1, ¶ 11. Within five days of the seizure, Plaintiffs received by their own account "more than 1,500 documents with more to come throughout the week." ECF No. 1, 3. Thus, by the Plaintiffs own pleadings, they admit to detailed notice of the case against them and an opportunity to be heard.

Furthermore, if Plaintiffs are unable to adequately prepare for a hearing in ten business days, they have a procedure by which they may appeal as discussed above. Va. Code § 3.2-6569(E). Thus, for the same reasons they are unlikely to succeed on the merits of their Due Process challenge to Virginia's statutory scheme, Plaintiffs are unlikely to show clear evidence of irreparable harm.

### C. Injunctive relief is not justified by the balance of the equities or public interest.

When an injunction is sought against government actors, the requirements that a petitioner show that the balance of equities and public interest are in their favor merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Indeed, the balance of the equities and the public interest result in the same analysis when the State is the entity the Plaintiffs seek to enjoin on the basis of a purported due process violation, because the analysis entails balancing the plaintiffs' private interests against the public interests of the State, including the function sought to be enjoined. *See Mathews v. Eldridge*, 424, U.S. 319, 335 (1976) (characterizing a due process challenge as a balancing test between private and public interests).

The State has an important interest in animal welfare. *See, e.g., Envigo RMS, LLC*, 2022 U.S. Dist. LEXIS 91545 at *29 (holding by this Court that the *Winter* factors were met justifying a retraining order governing care of the beagles at the Envigo research facility in relevant part

because "the Government has a strong interest in ensuring compliance with federal law and regulations to safeguard human treatment of animals."). In *Envigo*, this Court conducted an analysis of the *Winter* factors and found the balance of the equities and the public interest justified an *ex parte* restraining order in order to prevent additional harm to the beagles still in Envigo's care. Virginia has no less interest in enforcing its state animal welfare laws than the federal government has in enforcing federal animal welfare laws. The public interest and the equities in both cases weigh in favor of rapid government action to safeguard animals in jeopardy due to violations of animal welfare laws.

As discussed above, the Commonwealth is also statutorily required to care for the seized animals until the deprivation hearing. Va. Code § 3.2-6569(F). Thus, a hearing ten business days after seizure permits innocent owners and animal caretakers to quickly obtain the return of their animals and minimizes the expense to the state for caring for animals that are neither abandoned nor cruelly treated or neglected. Plaintiffs thus fail to meet the third and fourth *Winters* factors, as the balance of the equities and the public interest are in Defendant's favor.

## CONCLUSION

For the forgoing reasons the defendant, Michelle Welch, respectfully requests that this Court dismiss the Plaintiffs Motions for both emergency and permanent injunctions.

Respectfully submitted,

*/s/ Erin R. McNeill*

| | |
|---|---|
| Jason S. Miyares<br>Attorney General | Erin R. McNeill (VSB No. 78819)*<br>Assistant Attorney General<br>Office of the Attorney General |
| Steven G. Popps<br>Deputy Attorney General | 202 North Ninth Street<br>Richmond, Virginia 23219<br>Telephone: (804) 692-0598 |
| Jacqueline C. Hedblom<br>Senior Assistant Attorney General/ | Facsimile: (804) 371-0200<br>emcneill@oag.state.va.us |

12

Trial Section Chief

*Counsel of Record*

Calvin C. Brown
Assistant Attorney General/Unit Manager

## CERTIFICATE OF TRANSMISSION

      I hereby certify that on December 18, 2023, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing (NEF) to all counsel of record.

*/s/ Erin R. McNeill*