CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
12/19/2023
LAURA A. AUSTIN, CLERK
BY: s/ C. Amos
       DEPUTY CLERK

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION**

| | |
|---|---|
| DEBORAH MOGENSEN, *et al.*, | CASE NO. 6:23-cv-00077 |
| *Plaintiffs*, | |
| v. | MEMORANDUM OPINION & ORDER |
| MICHELLE WELCH, *in her individual capacity and in her official capacity as the Senior Assistant Attorney General of Virginia and Director of the Animal Unit*, | JUDGE NORMAN K. MOON |
| *Defendant.* | |

This matter is before the Court on Plaintiffs' Motion for an Emergency Preliminary Injunction pursuant to 42 U.S.C. § 1983. In early December, Defendant Welch executed a search warrant of Plaintiff Deborah and Karl Mogensen's zoo. During the search, approximately 95 animals were seized for suspected animal abuse or neglect, and the Commonwealth determined a Bengal tiger was in such poor health that it had to be euthanized. Plaintiffs then filed this motion, alleging that their due process rights are being violated by the Commonwealth's actions under Va. Code § 3.2-6569(C). That statute requires that a civil forfeiture hearing be held no more than ten business days after the seizure of animals by the Commonwealth.

Plaintiffs complain that ten days provides too little time to prepare for the hearing. Accordingly, they ask this Court to declare the ten-day notice period unconstitutional and issue a temporary restraining order ("TRO") stopping the state civil forfeiture hearing from occurring. They also seek relief from animal care plans issued by the Defendant. Because Plaintiffs have not shown extraordinary circumstances to support a TRO in their request to have this federal

court interfere in a forfeiture action under Virginia law brought by the Virginia Attorney General in Virginia state court, the Court will **deny** Plaintiffs' motion.

## Background

Plaintiffs own and operate Natural Bridge Zoo in Natural Bridge, Virginia. Dkt. 1 at 4. On December 6, 2023, Defendant, accompanied by seven veterinarian experts, *id.* at 8, supervised a search of the Zoo, and authorized the impounding of approximately 95 animals of at least 15 different species. *Id.* at 8, 9. Most, but not all, of the confiscated animals belong to Plaintiffs. *Id.* at 11. The Defendant also issued "Action Plans" to the Plaintiffs, which lay out care improvements needed for some 15 species of animals still in the Plaintiffs' possession. Dkt. 1 at 11; Dkt. 3 at 6.

On December 8, 2023, Defendant served Plaintiffs notice of her request to hold a civil forfeiture hearing in the General District Court of Lexington/Rockbridge County on December 20, 2023, to determine whether the seized animals were subject to cruel treatment or neglect, pursuant to Va. Code § 3.2-6569. *Id.* at 9; Dkt. 3-3. Plaintiffs subsequently filed their Complaint with this Court on December 11. Dkt. 1. Notwithstanding the urgency inherent in their request, Plaintiffs waited several days (until December 14), to file their Motion for a Temporary Restraining Order. Dkt. 3.

Va. Code § 3.2-6569(C) provides that:

> [u]pon seizing or impounding an animal, the humane investigator, law-enforcement officer or animal control officer shall petition the general district court in the city or county where the animal is seized for a hearing. The hearing shall be not more than 10 business days from the date of the seizure of the animal.

The statute further provides that "[t]he procedure for appeal and trial shall be the same as provided by law for misdemeanors, except that unless good cause is determined by the court, an appeal shall be heard within 30 days." *Id.* § 3.2-6569(E). If an animal is held for more than 30

days, the owner may be required to post bond for the amount of the cost of boarding the animal. *Id.* 3.2-6569(F). Notably, the bond is not forfeited if the owner is found to be not guilty of the violation. *Id.*

Plaintiffs' Motion requested that this Court declare the ten-day provision unconstitutional: Plaintiffs argue that holding the hearing ten business days after seizure does not allow them time to mount an adequate defense, and consequently violates their due process rights. Dkt. 3 at 2. In particular, Plaintiffs posit that the time period will not allow them time to acquire a legal team, request and acquire relevant discovery; to work through seven banker boxes of evidence and the 1,500 pages of discovery already received; acquire experts to speak as to the various species of animals seized; provide those experts with adequate preparation time, and for the legal team to prepare for the hearing, including by taking depositions. Dkt. 3 at 4–5. Plaintiffs further contend that "the civil forfeiture hearing carries with it[] criminal implications." *Id.* at 14.

Plaintiffs also argue that the Action Plans outlining care requirements for non-seized animals are an unlawful seizure of their property, and hence also violate their due process rights. *Id.* at 14. Counsel for Defendant entered an appearance, and this Court held a status conference on the matter on December 18, 2023 at 1:00 p.m. Dkt. 8 (Minutes). Defendant filed their response in opposition to Plaintiffs' emergency motion for a TRO just before the status conference. Dkt. 7. And at the status conference, the Court afforded Plaintiffs the opportunity to submit one further filing in support of their motion for a TRO that evening by 10:00 p.m. They did so. Dkt. 10. Plaintiffs also filed a motion requesting that this Court issue a ruling by December 19, 2023 at 12:30 p.m., indicating that they wished to preserve the opportunity to appeal any adverse ruling. Dkt. 11. The Court has considered the parties' arguments and their filings, and the matter is ripe for disposition.

**Standard of Review**

As with a plaintiff seeking a preliminary injunction, a plaintiff seeking a temporary restraining order[1] must establish (1) "that he is likely to succeed on the merits," (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that the injunction is in the public interest." *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Moreover, "*Winter* made clear that *each* of these four factors must be satisfied to obtain preliminary injunctive relief." *Henderson ex rel. NLRB v. Bluefield Hosp. Co.*, 902 F.3d 432, 439 (4th Cir. 2018). Such relief constitutes an "extraordinary remedy" that is never awarded as of right. *See Winter*, 555 U.S. at 24.

**Analysis**

Plaintiffs' motion for an emergency preliminary injunction fails for at least two independent reasons. First, under the abstention doctrine established in *Younger v. Harris*, 401 U.S. 97 (1971), the Court must decline to intervene in the challenged state court proceeding—a proceeding that, Plaintiffs acknowledge, "has severe criminal implications." Dkt. 1 at 3. And second, even if the Court could reach the merits of Plaintiffs' motion, Plaintiffs have not made "a clear showing that [they are] entitled" to a preliminary injunction. *See Winter*, 555 U.S. at 22. Far from it. They have not satisfied any of the *Winter* factors. *Id.* at 20.

1. **Plaintiffs' Request that the December 20 Hearing Be Enjoined**

   a. *Younger* **Abstention**

The Court will turn first to whether it can—or should—use its equitable powers to enjoin the challenged state proceeding. Determining that the challenged proceeding is "more akin to a

---

[1] "The standard for granting either a TRO or preliminary injunction is the same." *Toure v. Hott*, 458 F. Supp. 3d 387, 396 (E.D. Va. 2020) (quoting *Sansour v. Trump*, 245 F. Supp. 3d 719, 728 (E.D. Va. 2017)).

4

criminal prosecution than are most civil cases," the Court will conclude that it should not. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975).

"Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." *Younger*, 401 U.S. at 43. "That policy was first articulated with reference to state criminal proceedings, but … the basic concern—that threat to our federal system posed by displacement of state courts by those of the National Government—is also fully applicable to civil proceedings in which important state interests are involved." *Moore v. Sims*, 442 U.S. 415, 423 (1979) (citing *Huffman*, 420 U.S.).

For instance, in *Huffman*, the Supreme Court held that abstention was appropriate in civil proceedings where "[t]he State is a party" and "the proceeding is both in aid of and closely related to criminal statutes." *Huffman*, 420 U.S. at 604. *Huffman* dealt specifically with whether a federal court ought to intervene in a civil enforcement proceeding to abate the showing of obscene movies. *Id.* at 598–99. Noting that the state had "*criminal* statutes which prohibit[ed] the dissemination of obscene materials," *id.* at 604 (emphasis added), the Court observed that while an "injunction [of the state civil proceeding would] not directly disrupt [the State's] criminal justice system, it [would disrupt] the State's efforts to protect the very interests which underlie its criminal laws." *Id.* at 604–05. The Court concluded that "an offense to the State's interest in the nuisance litigation is likely to be every bit as great as it would be were this a criminal proceeding." *Id.* at 604 (citation omitted). In other words, the Supreme Court determined that federal courts should generally abstain from enjoining state "enforcement actions … initiated to sanction the federal plaintiff, i.e., the party challenging the state action, for some wrongful act." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79 (2013) (citation omitted).

5

The Court's reasoning in *Huffman* controls this case. In Plaintiffs' own words, the challenged state proceeding "can have severe criminal implications." Dkt. 1 at 10; *see also* Dkt. 3 at 15. This is because the goal of the proceeding is to "determine whether [any seized animal] has been abandoned, has been cruelly treated, or has not been provided adequate care"—i.e., whether Plaintiffs engaged in some form of animal neglect or cruelty, warranting the seizure of their animals. Va. Code § 3.2-6569(C). As Plaintiffs acknowledge, criminal charges for animal cruelty "typically come after the forfeiture hearing." Dkt. 1 at 7; *see also* Va. Code § 3.2-6570 (explaining the criminal penalties for animal cruelty). Indeed, at yesterday's status conference, Plaintiffs' counsel doubled down on the criminal implications of the civil forfeiture hearing. It follows that, like in *Huffman*, the statute at issue here "is both in aid of and closely related to criminal statutes;" accordingly, *Younger* abstention is warranted.[2] *Huffman*, 420 U.S. at 604.

Having determined that this is the type of case where *Younger* abstention is appropriate, the Court must now ensure that no exception applies. There are two primary exceptions to *Younger* abstention: a federal court may intervene in a state proceeding if (1) it "properly finds that [the] state proceeding is motivated by a desire to harass or is conducted in bad faith" or (2) where the challenged statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Id.* at 611 (internal quotation marks omitted).

---

[2] The Court notes that the *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) factors are clearly satisfied here. First, there is an ongoing state proceeding. *See* Dkt. 3 (Ex. 3). Second, the State has an important interest in preventing animal abuse. And finally, as discussed below, Plaintiffs will have an opportunity to raise their federal claim in state court.

Neither exception is applicable here. There is no evidence of bad faith,[3] and the statute—Va. Code § 3.2-6569(C)—is not unconstitutional "in every clause, sentence and paragraph." *Huffman*, 420 U.S. at 611. Far from it. Indeed, as discussed below, Plaintiffs have not shown it likely that the statute suffers from *any* constitutional infirmity. Moreover, Plaintiffs put forward no evidence to suggest that they will not have an opportunity to meaningfully raise their constitutional concerns in state court—a fact which further confirms that abstention is appropriate in this case.[4] *See Juidice v. Vail*, 430 U.S. 327, 337 (1977) (explaining that if a litigant "ha[s] an opportunity to present their federal claims in the state proceedings," *Younger* abstention will typically apply); *see also Beam v. Tatum*, 299 F. App'x 243, 248 (4th Cir. 2008).

In sum, because the challenged proceeding is "akin to a criminal prosecution," the Court will abstain from considering the merits of Plaintiffs' motion, *Huffman*, 420 U.S. at 604, warranting a denial of their request for a TRO.

**b. Preliminary Injunction Requirements**

Even if *Younger* abstention did not apply, the Court cannot conclude, on the merits, that Plaintiffs have demonstrated that they qualify for the "extraordinary remedy" of a TRO. *See*

---

[3] True, Plaintiffs allege that "Defendant is trying to put Plaintiffs out of business," Dkt. 1 at 2, and is "attempting to force Plaintiffs into a compromised position." Dkt. 10 at 4. But outside these conclusory statements, Plaintiffs point to no evidence suggesting that Defendant acted in bad faith. Without more, such barebones assertions will not open the door to *Younger*'s bad faith exception.

[4] Plaintiffs argue that since "the General District Court is not a court of equity[,] … Plaintiffs absolutely cannot seek equitable relief with respect to their due process rights." Dkt. 10 at 3. Their argument, however, misses the mark. Just because the General District Court is not a court of equity does not mean that it cannot entertain Plaintiffs' constitutional claims. In fact, constitutional challenges *are allowed* in general district court. *Cf.* Va. Code § 16.1-106 (authorizing appeals of constitutional issues from general district court in civil cases); Va. Code § 16.1-131.1 (authorizing appeals of constitutional issues from general district court in criminal cases). So, contrary to Plaintiffs' contentions, they do have an adequate remedy at law.

*Winter*, 555 U.S. at 24. As outlined below, Plaintiffs fail to meet any of the four requirements for an emergency injunction, which independently defeats their request.

      **i.**     **Likelihood of Success on the Merits**

To show that a TRO is warranted, Plaintiffs must establish that they are "likely to succeed on the merits." *Winter*, 555 U.S. at 20. In this case, Plaintiffs would need to establish that they would likely succeed in their argument that Va. Code § 3.2-6569(C), mandating a hearing within ten business days of an animal being seized, violated their due process rights. They have not made that showing.

As Plaintiffs correctly state, the basic principles of due process are notice and a meaningful opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). That said, "[d]ue process is not a one size fits all proposition. To the contrary, 'due process is flexible and calls for such procedural protections as the particular situation demands.'" *Miranda v. Garland*, 34 F.4th 338, 359 (4th Cir. 2022) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). In analyzing whether due process was afforded, courts are to weigh the factors identified in *Mathews*: 1) the private interest that will be affected by the official action; 2) the risk of an erroneous deprivation of that interest through the procedures used, and any probable value of additional or substitute procedural safeguards; and 3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. 424 U.S. at 335.

The first *Mathews* factor is uncontested: the seizure of the animals by the Commonwealth implicates Plaintiffs' property rights. Dkt. 6 at 6. The Court will therefore proceed to consider whether the statutory scheme creates an undue risk of erroneous deprivation, and how the Commonwealth's interest is implicated.

Here, the statute requires notice to Plaintiffs of the hearing in general district court. Va. Code § 3.2-6569 (D). Plaintiffs state that they received notice of the December 20 hearing on or about December 8. Dkt. 1 at 9. Although the timeframe may not be ideal for Plaintiffs, it is not so short that they have no opportunity to prepare a robust defense. As owners of the Zoo, they necessarily have the lion's share of information about their own animals, care practices, and habitats. What is more, at the civil forfeiture hearing, the Commonwealth is held to an exacting standard: it must prove its case beyond a reasonable doubt. Va. Code § 3.2-6569 (E).

Moreover, the statute under which the animals were seized provides further due process protections: it establishes that "[t]he procedure for appeal and trial shall be the same as provided by law for misdemeanors, except that unless good cause is determined by the court, an appeal shall be heard within 30 days." Va. Code § 3.2-6569 (E). Notably, those convicted of misdemeanors in a general district court have a right of appeal to the circuit court, Va. Code § 16.1-132, and that appeal is heard *de novo*.[5] Va. Code § 16.1-136. *See Kenyon v. Commonwealth*, 561 S.E.2d 17, 19–20 (Va. Ct. App. 2002) (stating that one convicted of a misdemeanor "may appeal to the circuit court for a trial *de novo*" which "annuls the former [district court] judgment as completely as if no trial had ever occurred") (citations omitted). On appeal, Plaintiffs are also entitled to trial by jury. Va. Code § 3.2-6569 (E). Plaintiffs cannot complain that they get two bites at the apple to mount their defense.

Given these protections, particularly the high evidentiary standard that the Commonwealth must meet at the civil forfeiture hearing and that Plaintiffs had notice of the

---

[5] Additionally, as described above in footnote 4, Virginia law explicitly provides procedures for raising constitutional claims in the general district court. The opportunity to present constitutional argument *at the December 20 hearing itself* further undermines Plaintiffs' argument that the hearing date violates due process.

9

hearing twelve days in advance, the Court finds the statutory scheme more than adequate to address the risk of erroneous deprivation.[6] Therefore, the Court concludes that there would be little value in the addition of further "procedural safeguards," *i.e.* the additional time requested by Plaintiff.

As to the final *Mathews* factor, the Commonwealth, by implementing Virginia's animal protection statute, is acting in the public interest.[7] *See infra* pp. 13–14; *cf. U.S. v. Envigo RMS, LLC*, No. 6:22-CV-00028, 2022 WL 2195030, at *2 (W.D. Va. June 17, 2022) (stating that public interest as expressed in federal animal welfare statute supports protecting animals from inhumane treatment).

Because the statutory scheme allows for this layered, more prolonged review process, the harm that Plaintiffs assert—i.e., that their due process rights are violated because they cannot mount an adequate defense—looks more "remote or speculative" than "actual and imminent." *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991).

During the status conference, Plaintiffs raised the argument that their due process rights cannot be vindicated by the statutory scheme because they might be required to post bond to cover the cost of boarding animals that are held for more than 30 days. Va. Code 3.2-6569(F). This argument is similarly speculative. Plaintiffs have not offered any evidence that the bond would in fact deprive them of access to the circuit court. Nor have they made any showing that

---

[6] Further, the Commonwealth argues in its brief that risk of erroneous deprivation is low because the seizure occurred after inspection by veterinarians. Dkt. 6 at 7.

[7] The Commonwealth contends that delaying the hearing would cause undue costs to provide for the animals' care. Dkt. 6 at 8. While not persuaded that the Commonwealth must be wholly shielded from any burden related to caring for animals which it chose to seize, the Court does find that the final factor favors the Commonwealth based on its public interest in animal welfare.

the cost of boarding the animals—which determines the amount of the bond—differs substantially from the cost of caring for the animals themselves. Indeed, even after the issue was squarely raised in the Commonwealth's filing and at the status conference, and the Court afforded Plaintiffs the opportunity to submit a supplemental filing on the issue, Plaintiffs still offer no evidence that they would be unable to afford the cost of the bond, nor that any such costs would differ in any material way from the costs of supporting such animals in the usual course. *See* Dkt. 10.

Given these robust procedural protections and the speculative nature of the harm, the Court concludes that Plaintiffs have not clearly demonstrated that their due process rights have been violated. Hence, the alleged due process violation does not provide grounds for a finding of that the challenged statute is unconstitutional.[8]

### ii. Irreparable Harm

To secure a preliminary injunction or temporary restraining order, the movant must further establish that "he is likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20. Irreparable harm is that which is "actual and imminent," not "remote or speculative." *Direx Israel, Ltd.*, 952 F.2d at 812 (internal quotation marks omitted). Irreparable harm "presupposes the absence of an available remedy for relief, whether administrative or judicial." *Sink v. Morton*, 529 F.2d 601, 604 (4th Cir. 1975) (citations omitted). The "possibility that adequate compensatory or other corrective relief will be available at a later date … weighs heavily against a claim of irreparable harm." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017).

---

[8] Plaintiff requested that this Court, in addition to issuing an emergency injunction, "declare the ten day notice period unconstitutional." Dkt. 3 at 2. Since, as discussed above, the statute includes adequate due process protection, the Court will not make any such declaration.

Plaintiffs state that they "will suffer an immediate irreparable harm because, without a stay of the 10-day hearing they will likely lose their (animals) property to the government's taking for good." Dkt. 3 at 8.

This assertion of irreparable harm fails both because the loss of the animals, as *one* potential outcome of the hearing, is speculative, and because Plaintiffs do not address the appeals process discussed above. The civil forfeiture hearing on December 20 will not determine Plaintiffs' property rights "for good," because if Plaintiffs are not satisfied with the outcome of that hearing, they have the right to appeal and to present a new, expanded record. Moreover, if the necessary discovery is as extensive as Plaintiffs assert, that suggests that they could present an argument that the circuit court has good cause to push the new hearing later even than the 30 days provided for by the statute. The December 20 hearing is merely Plaintiffs' first bite at the apple, and as of right, they have a second opportunity in circuit court.

Given that the statutory scheme adequately provides for future corrective relief, which "weighs heavily against a claim of irreparable harm," the Court concludes that Plaintiffs have not demonstrated that an emergency injunction is necessary to prevent the irreparable harm of losing their property.[9] *Di Biase*, 872 F.3d at 230.

---

[9] Although Plaintiffs do not argue that the alleged violation of their due process rights is itself an irreparable harm, the Court will consider the question. However, as discussed above, Plaintiffs have not clearly shown that their due process rights have in fact been violated. Hence, the harm of the alleged due process violation does not provide grounds for a finding of likely irreparable injury.

### iii.   Balance of Equities and Public Interest[10]

The last two *Winter* factors are whether the balance of the equities tips in the plaintiff's favor, and the public interest is furthered by issuing the temporary restraining order. *See Winter*, 555 U.S. at 20. Plaintiffs fare no better on these factors.

Plaintiffs argue that they face not only the taking of animals, but that their "reputations are at stake, their business has closed, and the civil forfeiture hearing carries with it criminal implications." Dkt. 3 at 14. They believe those harms "far outweigh[ ] any harm to Defendant." *Id.* In other words, Plaintiffs argue they will be denied the chance to save their reputations, their business, their livelihoods, without due process, and so the equities tip in their favor. And if that were the case, Plaintiffs would have a point. But their position is untethered from the record and the law. As described, Plaintiffs mischaracterize the state's initiation of civil forfeiture as some fly-by-night operation—when it is a comprehensive state statutory regime, laden with multiple layers of protections, under which Plaintiffs will be afforded no less than *two* independent opportunities (in General District Court and, if necessary, Circuit Court), to present a full defense. Nor have Plaintiffs substantiated the harms they argue will befall them if no TRO issues.[11]

On the other side of the scales, Plaintiffs also ignore the substantial intrusion they would visit upon ongoing state court proceedings—subjecting the state itself to irreparable harm. *See Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a

---

[10] These factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

[11] For instance, no evidence before the Court demonstrates that their business has or will close, as they argue. *See* Dkt. 3 at 14; Dkt. 3-1.

form of irreparable injury.") (citation omitted). And any "criminal implications" only bolster the equities in favor of the state. The Supreme Court directs federal courts to *abstain*, not *intervene*, under such circumstances. *See Younger*, 401 U.S. at 43–44. Plaintiffs have not shown that the equities tip in their favor.

Nor have Plaintiffs established that issuance of a TRO is in the public interest. *See Winter*, 555 U.S. at 20. Quite the opposite. On the one hand, as Plaintiffs argue, it is the public interest to protect constitutional rights. *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 191 (4th Cir. 2013) (en banc) ("[U]pholding constitutional rights surely serves the public interest."). Of that there is no dispute. On the other hand, the public interest "may be declared in the form of a statute." Charles Alan Wright & Arthur R. Miller, 11A Fed. Prac. & Proc. § 2948.4 (3d ed.). The state statute plainly embodies and gives effect to the public interest in protecting animals that have been abandoned, cruelly treated, or otherwise deprived of adequate care. *See, e.g.*, Va. Code §§ 3.2-6569(A), (I). And, for its part, the Fourth Circuit has explained that "the public interest … is served by adherence to the State statute unless and until it is declared invalid." *Telvest, Inc. v. Bradshaw*, 618 F.2d 1029, 1036 (4th Cir. 1980). In this case Plaintiffs have not shown that their constitutional rights will be infringed were a TRO not to issue. Under these circumstances, it would certainly not serve the public interest for this federal court to intervene in the state's ongoing civil forfeiture proceeding conducted in state court pursuant to state statutory authority. As with the other factors, Plaintiffs have failed to demonstrate that issuance of the TRO would be in the public interest.[12]

---

[12] Plaintiffs also argue that "numerous owners of agricultural or zoo animals" have been "forced to show up with inadequate prepared representation" on account of the ten-day forfeiture hearing. Dkt. 3 at 14. But they have not even articulated how, much less demonstrated, that they have standing to assert any other owner's rights. *See Sessions v. Morales-Santana*, 582 U.S. 47,

Since Plaintiffs have not demonstrated that they satisfy any, let alone all, of the *Winter* factors, the Court will deny the request for a TRO as to the December 20 hearing.

**2. The Action Plans**

Plaintiffs further request that this Court issue a TRO "against Defendant from exercising control over [Plaintiffs'] animals through these action plans – regarding animals who were admittedly not seized and are not subject to the requested forfeiture hearing." (sic) Dkt. 3 at 2. The Action Plans mandate particular steps toward the care of some 15 species of animals still in Plaintiffs' possession and state that improvements are necessary to avoid further action by the state. Dkt. 1 at 11; Dkt. 3 at 6.

In their Complaint and Motion, Dkts. 1, 3, Plaintiffs provide next to no argument or information as to how their request that the Action Plans be enjoined meets the *Winter* requirements. Plaintiffs merely assert that "irreparable harm has been caused by the Action Plans which place Mr. and Mrs. Mogensen under a permanent spotlight related to animals the government admits were not seized and not subject to their upcoming civil forfeiture hearing." Dkt. 3 at 15. The Court is not sure what this means—presumably that the Commonwealth will monitor Plaintiffs' Zoo to determine whether the animals there are abused or neglected.[13] More than anything else, the Action Plans appear to be merely guides as to how Plaintiffs can successfully follow the parameters of Virginia's animal protection statute. In the absence of more evidence and argument from Plaintiffs, the Court cannot conclude that they meet the requirements for a TRO as to the Action Plans.

---

57 (2017) ("Ordinarily, a party must assert [their] own legal rights and cannot rest [their] claim to relief on the legal rights of third parties.").

[13] The Action Plans, which are each specific to an animal species, include such directives as to "check for parasites," and to provide adequate nutrition, bedding in animal shelters, and hoof and foot care. Dkt. 3-4 at 1, 13, 42, 53, 57

Plaintiffs also requested that the Court "[d]eclare unconstitutional the Defendant's attempts at exercising control over Plaintiffs' property through alleged animal action plan" (sic). Dkt. 3 at 2. Given the current record, the plans appear to be guidance as to how Plaintiffs can avoid violating Virginia's animal protection statute as to the animals still in their possession. This leaves the Court in no position to declare the Action Plans unconstitutional.

## Conclusion

In conclusion, the Court **DENIES** Plaintiffs' Motion for an Emergency Preliminary Injunction. Dkt. 3. The Court **DENIES** Plaintiffs' supplemental motion in support of its TRO request to the extent that it requests relief on the merits, but **GRANTS** only to the extent that the Court allowed and considered Plaintiffs' supplemental argument and briefing therein. Dkt. 10. The Court **DENIES** *as moot* Plaintiffs' request for a ruling by December 19, 2023 at 12:30 p.m., as the Court has so ruled in advance of Plaintiffs' requested timeline. Dkt. 11.

It is so **ORDERED**.

The Clerk of Court is directed to send this Memorandum Opinion and Order to all counsel of record.

Entered this 19th day of December, 2023.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE